John R. Till    SBN 178763   JTill@PaladinLaw.com
Kirk M. Tracy   SBN 288508   KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
1176 Boulevard Way
Walnut Creek, CA  94595
Telephone:     (925) 947-5700

Counsel for Luis Family Trust, by and through its trustees, James M. Luis and Linda M. Luis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Luis Family Trust, by and through its trustees, James M. Luis and Linda M. Luis<br><br>*Plaintiff,*<br><br>*v.*<br><br>ROBERT WAGLE, individually, as trustee for the Robert A & Patricia E Wagle Trust, as successor to the business operations of Jack Wagle Tire & Brake Service, and as the Personal Representative for the prior deceased owners Ronald Wagle, Deceased, Elma Wagle, Deceased, and John W Wagle, Deceased.<br><br>*Defendants*. | Case No. 4:24-cv-3069<br><br>THIRD AMENDED COMPLAINT FOR:<br><br>1. Abatement of Imminent and Substantial Endangerment—RCRA § 7002(a)(1)(B) |

Plaintiff Luis Family Trust, by and through its trustees, James and Linda Luis ("Plaintiff") brings this action against Robert Wagle, individually, as trustee for the Robert A & Patricia E Wagle Trust, as successor to the business operations of Jack Wagle Tire & Brake Service, and and as the Personal Representative for the prior deceased owners Ronald Wagle, Deceased, Elma Wagle, Deceased, and John W Wagle, Deceased (collectively, "Wagle" or "Defendant"); and alleges upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff files this action to address and resolve the continuing environmental problem created by Defendant's acts or omissions that caused and continue to cause damage to



health, safety, and property of Plaintiff, surrounding properties, and the environment.

2. The area of contamination for which Plaintiff seeks relief includes the property located at 21715 Mission Boulevard, Hayward, California (the "Property") and the vertical and horizontal extent of the contamination at or emanating to or from the Property, including the locations where contamination has come to be located or threatens to become located (collectively, the "Site").

3. The Property and the Site have been impacted by contamination at and emanating from the operations of S&K Toyota, including at 21715 and 21739 Mission Blvd. (collectively, "S&K Toyota Operations"), and is potentially impacted by contamination at and emanating from other historic automotive services at 21739 Mission Boulevard (the "Wagle Property").

4. In 2021, Plaintiff filed a related action, concerning the same subject matter, against Wagle and other defendants in the matter of *Luis Family Trust v. Salisbury-Kilmer Corporation, et al.* (N.D. Cal., no. 4:21-cv-8797-YGR) (the "Related Action"). In that matter, Plaintiff filed a claim against Wagle under section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), amongst other claims. Plaintiff subsequently dismissed its RCRA claim against Wagle *without prejudice*.

**PARTIES**

*Plaintiff*

5. Plaintiff is the owner of the Property. Plaintiff took title to the Property in 1999.

*Defendant*

6. Robert Wagle is named individually, as the trustee for the Robert A & Patricia E Wagle Trust, and as successor to the business operations of Jack Wagle Tire & Brake Service.

7. Robert Wagle is named as the Personal Representative for the prior deceased owners of 21739 Mission Blvd. Ronald Wagle, Deceased, Elma Wagle, Deceased, and John W Wagle, Deceased pursuant to California Code of Civil Procedure §§ 366.2 and 377.40.

8. Robert Wagle is a current owner of the Wagle Property and is Personal Representative for the prior deceased owners Ronald Wagle, Deceased, Elma Wagle, Deceased, and John W Wagle, Deceased whom have owned the property since approximately 1960.



1  Moreover, Robert Wagle is the successor owner of the Wagle Property.

2  *Defendants in the Related Action*

3  9. Salisbury-Kilmer Corporation, dba S&K Toyota ("S&K Toyota") leased the Property from approximately 1962 to 1990 and continuously operated an automotive business at the Property.

6  10. The Estate of Charles Kilmer, Deceased, is named as a defendant in the Related Action to the extent of his estate's assets, whether distributed or undistributed, and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Charles Kilmer served as the owner and operator of S&K Toyota from at least 1962 to 1990.

11  11. Salisbury-Kilmer Corporation was incorporated on or about September 27, 1966.

12  12. Salisbury-Kilmer Corporation is a suspended California Corporation.

13  13. S&K Toyota expanded its operations to the Wagle Property in approximately April 1980.

15  14. Wagle Tire & Brake Service f/k/a Wagle Tire Service, is a suspended California Corporation that operated at the Wagle Property beginning in approximately 1969 and continuing until approximately March 1980. Robert Wagle was an officer and director of Wagle Tire & Brake Service.

19  15. The Estate of John W. Wagle, Deceased, is named as a defendant in the Related Action to the extent of his estate's assets, whether distributed or undistributed, and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. John W. Wagle purchased the Wagle Property in approximately 1969 and was an owner, individually or as a trustee of the Robert A & Patricia E Wagle Trust, until his death on approximately May 17, 2016, and was an owner and operator, officer, and director of Wagle Tire & Brake Service f/k/a Wagle Tire Service.

26  16. The Estate of Elma Wagle, Deceased, is named as a defendant in the Related Action to the extent of her estate's assets, whether distributed or undistributed, and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected



by liability insurance policies. Elma Wagle purchased the Wagle Property in approximately 1969 and was an owner, individually or as a trustee of the Robert A & Patricia E Wagle Trust, until her death on approximately July 4, 2013, and was an owner and operator, and director of Wagle Tire & Brake Service f/k/a Wagle Tire Service.

17. Operations at the Wagle Property included automotive services including repair services dating back to the late 1960s, including Salisbury-Kilmer Corporation from approximately April 1980 until the early 1990s.

**JURISDICTION, VENUE, AND NOTICE**

18. This Court has jurisdiction over the subject matter of Plaintiff's First Cause of Action pursuant to section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a) and 28 U.S.C. § 1331.

19. Venue is proper in this Court pursuant to RCRA § 7002(a), because the alleged violation or alleged endangerment may occur in the district, 42. U.S.C. § 6972(a), because the release and damage occurred at the properties and business operations within this district.

20. Plaintiff provided notice of the actual and threatened endangerment, injury, and damage alleged herein by mailing notices of endangerment and of intent to file suit pursuant to RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), to the U.S. Environmental Protection Agency ("US-EPA"), the California EPA ("Cal-EPA"), the California Department of Toxic Substances Control ("DTSC"), and Defendants.

21. Plaintiff waited at least 90 days after receipt of the notices of endangerment and intent to file suit before filing this action.

22. Plaintiff has satisfied all jurisdictional prerequisites to filing this Complaint.

**GENERAL ALLEGATIONS**

*Operations at the Property*

23. The Site is located in a densely-populated urban area of mixed commercial and residential use.

24. Historically a gasoline station operated at the Property from 1923 to 1958, followed by automotive repair and autobody repair that operated from circa 1948 to 1962.



25. S&K Toyota operated at the S&K Toyota Operations locations from at least 1962 to 1990. Toyota Motor Sales, Inc. was the franchisor and on information and belief operated S&K Toyota at some point from at least 1962 to 1990 at the Property and the Wagle Property.

26. After S&K Toyota and Toyota Motor Sales, Inc., ceased operations of the automotive business in approximately 1990, no further automotive business utilizing the Chemicals of Concern was conducted at the Property.

27. Environmental investigations at the Site demonstrate that that soil, soil vapor, and potentially groundwater are impacted by chlorinated volatile organic compounds ("VOCs"), including tetrachloroethylene ("PCE") and trichloroethylene ("TCE") and their breakdown products (collectively, "Chemicals of Concern").

28. Based on sampling data, it is possible Chemicals of Concern may be from off-site sources which are were historically part of the S&K Toyota Operations.

29. During its operations at the Property and the Wagle Property, S&K Toyota handled, generated, disposed of, released, used, or stored Chemicals of Concern.

30. S&K Toyota operated its business at the Property and the Wagle Property when Chemicals of Concern were released into the environment.

31. John W. Wagle, Elma Wagle, and Robert Wagle, individually, and in his capacity as the Personal Representative for the prior deceased owners of the Wagle Property, operated their business at the Wagle Property when Chemicals of Concern were released into the environment.

32. During its operations at the Wagle Property, Wagle Tire & Brake Service f/k/a Wagle Tire Service, John W. Wagle, Elma Wagle, and Robert Wagle, individually, and in his capacity as the Personal Representative for the prior deceased owners of the Wagle Property, Deceased handled, generated, disposed of, released, used, or stored Chemicals of Concern.

### *The Contamination*

33. The source of Chemicals of Concern in the environment at the Site is S&K Toyota's auto businesses that operated its S&K Toyota Operations at the Property and adjoining properties (at least including the Wagle Property) continuously for approximately 76 years.

34. The Chemicals of Concern are each a hazardous substance as that term is defined in



1 federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(h), and are
2 each a hazardous waste and solid waste as those terms are defined in federal law, 42 U.S.C.
3 § 6903(5), (27), respectively.

4     35. The Chemicals of Concern include chlorinated hydrocarbons, specifically
5 tetrachloroethylene (aka, tetrachloroethene, perchloroethylene, and Perc) (collectively, "PCE"),
6 and associated degradation products, including trichloroethylene (aka, trichloroethene, 1,1,2-
7 trichloroethene, ethene, and trichloro) ("TCE"), dichloroethane ("DCE"), and vinyl chloride
8 ("VC").

9     36. PCE is a manmade chemical.
10     37. TCE is a manmade chemical.
11     38. DCE is a manmade chemical.
12     39. VC is a manmade chemical.
13     40. PCE is not naturally occurring in the environment.
14     41. TCE is not naturally occurring in the environment.
15     42. DCE is not naturally occurring in the environment.
16     43. VC is not naturally occurring in the environment.
17     44. TCE is a breakdown chemical of PCE.
18     45. DCE is a breakdown chemical of PCE.
19     46. VC is a breakdown chemical of PCE.

20     47. As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE
21 is closely regulated by the state of California and the federal government.

22     48. As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, TCE
23 is closely regulated by the state of California and the federal government.

24     49. As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, DCE
25 is closely regulated by the state of California and the federal government.

26     50. As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, VC
27 is closely regulated by the state of California and the federal government.

28     51. PCE is a hazardous substance as that term is defined in federal law, 42 U.S.C.



1  § 9601(14), and state law, Cal. Health & Safety Code § 25281(h).

2  52.  TCE is a hazardous substance as that term is defined in federal law, 42 U.S.C.
3  § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

4  53.  DCE is a hazardous substance as that term is defined in federal law, 42 U.S.C.
5  § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

6  54.  VC is a hazardous substance as that term is defined in federal law, 42 U.S.C.
7  § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

8  55.  When PCE is discarded or disposed of into the environment, including soil,
9  groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal
10  law, 42 U.S.C. § 6903(5), (27), respectively.

11  56.  When TCE is discarded or disposed of into the environment, including soil,
12  groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal
13  law, 42 U.S.C. § 6903(5), (27), respectively.

14  57.  When DCE is discarded or disposed of into the environment, including soil,
15  groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal
16  law, 42 U.S.C. § 6903(5), (27), respectively.

17  58.  When VC is discarded or disposed of into the environment, including soil,
18  groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal
19  law, 42 U.S.C. § 6903(5), (27), respectively.

20  59.  All groundwater within the state of California, including the groundwater at and
21  emanating from the Site is "water of the state" pursuant to California Water Code § 13050.

22  60.  Defendant caused or contributed to the past or present handling, storage, treatment,
23  transportation, generation, release, or disposal of Chemicals of Concern in the environment in, at,
24  and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water,
25  and the waters of the state of California, because Defendant released or otherwise discarded
26  Chemicals of Concern, or controlled and/or operated the property(ies) or business from which
27  Chemicals of Concern were released or otherwise discarded, and failed to prevent or abate the
28  contamination caused by the Chemicals of Concern.



61. At various times from at least 1962 to 1990, Defendant intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

62. Once the various discharges of Chemicals of Concern, whether intentional, sudden and accidental, or otherwise were released into the environment, these Chemicals of Concern continued to spread and migrate within the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California.

63. As a result of the discovery of the soil vapor contamination, on January 19, 2021, the Alameda County Department of Environmental Health ("ACDEH") issued a Notice of Responsibility for Site Cleanup Program requiring Plaintiff to investigate the concentrations and distributions of Chemicals of Concern at the Property.

64. Plaintiff has demanded that Defendant defend, indemnify, and hold Plaintiff harmless, but Defendant has not provided a defense, indemnity, or held Plaintiff harmless. Plaintiff is an innocent owner of the Property and has not caused or contributed to the contamination at the Site.

65. Defendant owned or operated an automotive business or the Wagle Property, at the time Chemicals of Concern were spilled, released, and discharged at the Site due to the willful, intentional, reckless, negligent, or improper use, handling, storage, and/or disposal practices of automotive operations.

66. Defendant owned or operated an automotive business or the Wagle Property, at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of lack of proper maintenance of automotive equipment.

67. Defendant operated an automotive business at the time Chemicals of Concern were spilled, released, and discharged at the Site during the delivery of PCE or TCE.

68. All groundwater within the state of California, including the groundwater in, at, and around the Site and all groundwater that has allegedly been adversely impacted by contamination

1  at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050. The groundwater at and migrating to or from the Site has potentially been or is threatened with being adversely impacted by alleged contamination at or emanating to or from the Site.

69. Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of Chemical of Concern in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because Defendant released or otherwise discarded Chemicals of Concern, or controlled or operated the property(ies) or business from which Chemicals of Concern were released or otherwise discarded, and failed to prevent or abate the contamination from Chemicals of Concern.

70. At various times from the 1962 to the present, Defendant intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

71. Once released into the environment, these Chemicals of Concern continued to spread and migrate within the environment at the Site, causing additional harm to the environment and continuing to threaten public health and the environment.

72. The Site needs to be further investigated and characterized so that a remedial action plan can then be developed and implemented at the Site, and regulatory closure obtained.

**FIRST CAUSE OF ACTION**
**(Abatement of Imminent and Substantial Endangerment – RCRA § 7002(a)(1)(B))**
**(Against Defendant)**

73. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 72, inclusive, as though set forth in full herein.

74. Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this action, is RCRA's citizen enforcement provision.

75. Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste" (b) "may present an imminent and substantial endangerment to health or the environment" and (c) the defendant falls within one of the categories of entities that Congress

declared liable for taking abatement action or "such other action as [this Court determines] may be necessary."

76. The persons declared liable by Congress for abatement of potential endangerments under RCRA § 7002(a)(1)(B) are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "hazardous wastes" or "solid wastes" at issue. Pursuant to the express terms of RCRA § 7002(a)(1)(B), these entities specifically include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

77. Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities." The term, however, does not include "solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section [1342 of Title 33] . . . ."

78. None of the discharges from Defendants is solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows, or industrial discharges which are point sources subject to permits under Section 1342 of Title 33.

79. Under Section 1004(5) of RCRA, 42 U.S.C. § 6903(5), "hazardous waste" is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of, or otherwise managed."

80. Under Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

81. Pursuant to authority under Section 3001 of RCRA, 42 U.S.C. § 6921, the

1  Administrator of the U.S. E.P.A. promulgated regulations at 40 C.F.R., Part 261 listing or
2  identifying certain hazardous wastes that the Administrator elects to subject to the strict regulatory
3  program established in Subtitle III of RCRA, 42 U.S.C. §§ 6921-6931.  Pursuant to RCRA §
4  7006(a)(1), 42 U.S.C. § 6976(a)(1), any RCRA hazardous waste finally so "listed or identified" by
5  the Administrator following formal, "notice and comment" rule-making as being subject to the
6  hazardous waste regulatory program set forth in Subtitle III of RCRA, has been finally and
7  conclusively determined for all purposes of any RCRA enforcement action, including the instant
8  one, to be a "hazardous waste" as defined by RCRA § 1004(5).  However, for purposes of RCRA
9  § 7002(a)(1)(B) citizen suits, substances also qualify as "hazardous wastes" and "solid wastes"
10 when the above statutory definitions (i.e., those set forth in RCRA §§ 1004(5) and (27)) are met.
11 40 C.F.R. § 261.1(b)(2).

12        82.    Plaintiff and Defendant are each a "person" within the meaning of RCRA
13 § 1004(15), 42 U.S.C. § 6903(15).

14        83.    The Chemicals of Concern released into the environment by Defendant are solid
15 wastes because they are discarded material resulting from commercial operations.

16        84.    The Chemicals of Concern released into the environment by Defendant are
17 "hazardous wastes" because of their concentrations, or physical or chemical characteristics, they
18 pose a substantial present or potential hazard to human health or the environment when improperly
19 treated, stored, transported, disposed of, or otherwise managed.

20        85.    Tetrachloroethylene (PCE) is a listed hazardous waste under 40 CFR Section 261.33
21 with hazardous waste no. U210 and chemical abstract no. 127-18-4.

22        86.    Trichloroethylene (TCE) is a listed hazardous waste under 40 CFR Section 261.33
23 with hazardous waste no. U228 and chemical abstract no. 79-01-6.

24        87.    Defendant caused or contributed to the past or present handling, storage, treatment,
25 transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous
26 substances" in the environment in, at, and around the Site because Defendant released or otherwise
27 discarded Chemicals of Concern or controlled the property from which Chemicals of Concern were
28 released or otherwise discarded, but failed to prevent or abate this "solid waste," "hazardous waste,"



"waste," and "hazardous substance" contamination.

88. The presence of Chemicals of Concern at and around the Site presents or may present an imminent and substantial endangerment to human health or the environment. The Regional Water Quality Control Board has an active case on the site and had issued a no further action letter prior to Plaintiff's purchase of the Property. However, the new environmental screening levels for PCE have prompted a re-opening of the environmental issues at the Site. Based on the prior sampling results showing PCE contamination and the new environmental sampling data required by Alameda County Health Department, Plaintiff has not been able to sell the Property to the current tenant at the Property and additional investigation, mitigation, and likely remediation is being required by the Alameda County Health Department.

89. Defendant's liability for abatement, Plaintiff's attorneys' fees, and for such other relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is strict, joint, and several.

90. Plaintiff gave the U.S. Attorney General and the EPA Administrator notice of the commencement of this action, as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

91. Plaintiff is entitled to injunctive relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining Defendant and requiring him to take such action, including a complete, timely, and appropriate investigation and abatement of all actual and potential endangerments arising from the released solid wastes and hazardous wastes at and emanating to or from the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in their favor for the following:

1. For a preliminary and permanent injunction requiring Defendant to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate, mitigate, and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendant's use and disposal of "hazardous substances" as alleged above.

2. For an order requiring Defendant to undertake at their sole cost all actions necessary to investigate, mitigate, and remediate the alleged contamination;

3. For an award to Plaintiff for its costs of litigation, including attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 6972(e);

4. For prejudgment and post-judgment interest;

5. For all costs of suit herein;

6. For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of any and all issues so triable.

DATED: May 21, 2024               PALADIN LAW GROUP® LLP


By: /s/ *Kirk M. Tracy*

John R. Till
Kirk M. Tracy
Counsel for Luis Family Trust, by and through its trustees, James M. Luis and Linda M. Luis

